ATTORNEYS FOR APPELLANT
Mary H. Watts
Karl L. Mulvaney
Kelly R. Eskew
Bingham McHale LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Kevin W. Betz
Sandra L. Blevins
Betz & Associates
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

**FILED**
Apr 08 2008, 12:20 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

No. 49S02-0710-CV-424

DANIEL H. RAESS, M.D.,                                  *Appellant (Defendant),*

v.

JOSEPH E. DOESCHER,                                  *Appellee (Plaintiff).*

_____

Appeal from the Marion Superior Court, No. 49D01-0206-PL-1116
The Honorable Cale Bradford, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0506-CV-490

_____

**April 8, 2008**

**Dickson, Justice.**


This is an appeal by defendant Daniel Raess, M.D., a cardiovascular surgeon, challenging a $325,000 jury verdict and judgment on a claim for assault brought by plaintiff Joseph Doescher, a hospital operating room perfusionist (the person who operates the heart/lung machine during open heart surgeries). The Court of Appeals reversed and remanded for a new trial. Raess v. Doescher, 858 N.E.2d 119 (Ind. Ct. App. 2006), *aff'd on reh'g,* 861 N.E.2d 1216 (Ind. Ct. App. 2007). We granted transfer and now affirm the judgment of the trial court.[1]

_____

[1] According to the Chronological Case Summary in this case, approximately three years before trial, the court approved a stipulation "protecting confidential information." Appellant's App'x at 613. The order, however, is not included in the materials submitted on appeal, and we are unaware of its contents. In ad-

Appealing the verdict and judgment, the defendant challenges the trial court's denials of (a) his motion for judgment on the evidence challenging the sufficiency of evidence to support the jury's finding of assualt, (b) his request to set aside or reduce the award of compensatory damages as excessive, (c) his objections to testimony from the plaintiff's expert witness, (d) his objections to the plaintiff's testimony regarding the doctor's prior offensive conduct, and (e) his tendered instruction on workplace bullying.

In his action against the defendant surgeon, the plaintiff perfusionist sought compensatory and punitive damages for assault, intentional infliction of emotional distress, and tortious interference with employment following a verbal altercation adjacent to the open-heart surgery area at St. Francis Hospital in Beech Grove, Indiana. The trial court granted the defendant's motion for partial summary judgment as to the claims for tortious interference. The jury thereafter returned a verdict in favor of the defendant on the claim for intentional infliction of emotional distress but found for the plaintiff on his assault claim and awarded compensatory but not punitive damages.

### 1. Denial of Judgment on the Evidence

The defendant challenges the trial court's denial of his motion for judgment on the evidence incorporated in his motion to correct errors. He alternatively argues (a) that there was no evidence to support liability for assault and seeks entry of judgment in his favor, and (b) that the $325,000 verdict was unsupported or excessive.

A motion for judgment on the evidence should be granted "only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." Dahlin v. Amoco Oil Corp., 567 N.E.2d 806, 810 (Ind. Ct. App.

dition, after entering judgment on the jury verdict, the trial court granted the defendant's motion for "renewed" protective order and placed "under seal and protection all depositions and discovery in this case." Tr. at 240-42; *see* "Corrected Appendix to Brief of Appellee" at 640 (which should have been identified as "Appellee's Appendix," Ind. App. R. 49(A), 50(A)(3)). Because the defendant's appellate briefs and appendix have not identified any contents as confidential pursuant to Trial Rule 5(G) or otherwise, we deem the appellate record in this case to be unrestricted by the trial court confidentiality order.

1991).  Upon appellate review of a trial court ruling on such a motion, the reviewing court "must consider only the evidence and reasonable inferences most favorable to the nonmoving party." Sipes v. Osmose Wood Preserving Co., 546 N.E.2d 1223, 1224 (Ind. 1989), *quoting* Jones v. Gleim, 468 N.E.2d 205, 206 (Ind. 1984).

The defendant first argues that there was no evidence to establish the following: (a) that an assault occurred, (b) that he acted with the requisite intent, or (c) that the plaintiff's reaction was reasonable.  The elements of assault were explained to the jury in Instruction 10C, to which neither party objected.

> To establish assault, Mr. Doescher [the plaintiff] must prove, by a preponderance of the evidence, that Dr. Raess acted in such a manner that Mr. Doescher was in reasonable fear of imminent harm at the time when Dr. Raess had the ability to inflict harm.  No physical contact had to occur so long as Mr. Doescher was reasonably afraid that such contact would occur.  If you find from the evidence that Dr. Raess committed an assault upon Mr. Doescher, then Dr. Raess is liable for damages caused by the assault.

Appellant's App'x at 515.  Assault is effectuated when one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person.  Cullison v. Medley, 570 N.E.2d 27, 30 (Ind. 1991).  As we have explained, "Any act of such a nature as to excite an apprehension of a battery may constitute an assault.  It is an assault to shake a fist under another's nose, . . . ." *Id.*, *quoting* W. Prosser & J. Keaton, PROSSER AND KEATON ON TORTS § 10 (5th ed. 1984).

Considering, as we must, only the evidence and inferences favorable to the non-moving party, we find testimony from the plaintiff that the defendant, angry at the plaintiff about reports to the hospital administration about the defendant's treatment of other perfusionists, aggressively and rapidly advanced on the plaintiff with clenched fists, piercing eyes, beet-red face, popping veins, and screaming and swearing at him.  The plaintiff backed up against a wall and put his hands up, believing that the defendant was going to hit him, "[t]hat he was going to smack the s**t out of me or do something." Tr. at 484.  Then the defendant suddenly stopped, turned, and stormed past the plaintiff and left the room, momentarily stopping to declare to the plaintiff "you're finished, you're history." *Id.* at 485.  In light of this evidence, there has not been a complete failure of proof.  To the contrary, there is substantial evidence or reasonable inferences to

3

support the jury's conclusions that an assault occurred, that the defendant acted with the requisite intent, and that the plaintiff's reaction was reasonable.

## 2. Claim of Excessive Damages

The defendant next contends that the trial court erred in failing either to set aside the jury's award of $325,000 in compensatory damages or to grant a remittitur dramatically reducing the award to a nominal amount. He argues that compensatory damages for the assault are precluded because the jury found him not liable on the plaintiff's count for intentional infliction of emotional distress, and because the trial court granted him summary judgment on the plaintiff's claim for intentional interference with his employment arrangement with the hospital. The defendant also asserts a claim of insufficient evidence of damages resulting from the assault. The defendant argues that the plaintiff could have returned to work the Monday following the parties' confrontation, that he was already suffering from psychological problems at the time, and that his failure to return to work was due to "his own stubborn pride" and not "because he was afraid" of the defendant.

Jury damage awards are entitled to great deference from appellate courts. Sears Roebuck & Co. v. Manuilov, 742 N.E.2d 453, 462 (Ind. 2001). A damage award will not be reversed if it "falls within the bounds of the evidence." *Id.*, *quoting* Annee v. State, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971). We "look only to the evidence and inferences therefrom which support the jury's verdict," and will affirm it "if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting …" Manuilov, 742 N.E.2d at 462, *quoting* Prange v. Martin, 629 N.E.2d 915, 922 (Ind. Ct. App. 1994).

We first disagree with the defendant's claims that compensatory damages for the assault are precluded due to the defeat of the plaintiff's counts for intentional infliction of emotional distress and intentional interference with the employment relationship. The defendant sought partial summary judgment asserting the absence of genuine issues of fact that would show the defendant intended to interfere with the relationship or that would show the plaintiff's hospital employment was impaired as a result of the alleged interference. The trial court's grant of the mo-

4

tion did not identify the grounds for its decision, but if granted for either of the reasons espoused by the defendant, it would not foreclose the plaintiff from recovering damages resulting from the defendant's assault. Nor are compensatory damages for the assault precluded by the fact that the jury returned a verdict for the defendant on the plaintiff's claim for intentional infliction of emotional distress. The jury's general verdict on this count does not establish that it was based on the absence of damages but could have resulted from the failure of proof of the requisite elements of the separate tort of intentional infliction of emotional distress.

As to the defendant's claim of insufficient evidence to support the jury's damage award, the evidence is conflicting. In contrast with the evidence emphasized by the defendant to support this claim, the plaintiff testified that the assault detrimentally affected his life in a variety of ways, including his career and earning capacity and his ability to interact with his wife, his family, and people in general. Evidence was presented that, as of the time of the trial, the plaintiff could not return to his work as a perfusionist because of the resulting emotional response, lack of focus, lack of confidence, and inability to make split-second decisions. The plaintiff presented psychiatric testimony that his confrontation with the defendant was the cause of the plaintiff's resulting "major depressive disorder with anxiety and panic disorder," because of which he was unable to return to his previous employment. Tr. at 771-73, 775. While the defendant points to other evidence to dispute these claims, in reviewing a jury verdict, our duty is clear: "[I]f there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed." Manuilov, 742 N.E.2d at 462. We decline to disturb the jury's award of damages in this case.

### 3. Challenges to Expert Testimony

The defendant also challenges the testimony of an expert witness, Dr. Gary Namie, arguing that the trial court should not have permitted him to testify as an expert witness and that the court's limitation of his testimony failed to cure the prejudice to the defendant.

Before trial, the defendant filed motions in limine to exclude Dr. Namie's testimony and to prevent him and any other witness from offering testimony or evidence depicting or referring

to the defendant as a "workplace bully." Appellant's App'x 481. The trial court denied the motion to exclude Dr. Namie's testimony and granted the "workplace bully" motion only in part, explaining:

> He can say he was a workplace—I thought he was a bully, workplace bully to [the plaintiff], okay, he can't paint him as a workplace bully against the world, but as it relates to what he did to [the plaintiff], I think that's permitted. . . . I'm going to show this [m]otion granted in part and denied in part.

Tr. at 164-65.

When the plaintiff called Dr. Namie as a witness during trial and asked him to give a definition of the term "workplace bully," the defendant generally objected "to this entire line of questioning," Tr. at 405, and the trial court cautioned the plaintiff's counsel and directed that the defendant be permitted to ask a preliminary question after each direct examination question by the plaintiff. The plaintiff's counsel then established that Dr. Namie had previously conversed with the plaintiff and asked, "from your expertise Dr. Namie are you able to categorize that incident under your expertise[?]" Tr. at 408. Counsel for the defendant objected on grounds the witness "is about to categorize this incident as something that we've agreed isn't supposed to be talked about." *Id.* The objection was overruled. The witness was next asked whether he was able to render an opinion as to the defendant's behavior in the incident, to which the defendant's counsel interjected a preliminary question and established that Dr. Namie had not directly spoken with the defendant and was basing his opinion on what he learned from the plaintiff and the defendant's deposition testimony and other documents. The defendant then objected on multiple grounds: lack of foundation; because the opinion would assert "that [the defendant] is or isn't something else," Tr. at 410; and because the witness "is an organizational psychologist purporting to give an opinion about something that these people did," Tr. at 412. The trial court overruled these objections and contemporaneously directed the jury as follows: "you decide what if any weight to give any witness's testimony, this or any others." Tr. at 412. Dr. Namie then testified: "In my opinion it's an episode of workplace bullying . . ." Tr. at 413. The defendant's final objection to Dr. Namie's testimony occurred a few moments later when the witness was asked if he had been able to render an opinion as to the defendant. The defense objected, asserting that Dr. Namie had not talked to the defendant; "is not qualified to render an opinion;" and that, as a consultant, "he does not render diagnoses or opinion." *Id.* Permitted to answer over the objec-

6

tion, the witness testified: "I concluded that based on what I heard and what I read that [the defendant] is a workplace abuser, a person who subjected [the plaintiff] to an abusive work environment. It was a horrific day, it was [a] particularly aggregous [sic], outrageous … episode." Tr. at 413-14.

In this appeal, the defendant asserts that the trial court erred by permitting Dr. Namie to testify as an expert witness, arguing that he was not qualified under Indiana Rule of Evidence 702 to give scientific expert testimony and that the trial court failed to "weed out unreliable junk science." Appellant's Reply Br. at 19. The defendant claims that he "repeatedly objected" to Dr. Namie's testimony at trial. His trial objections, however, did not assert the claim now presented on appeal.

Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review. Failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine. McCarthy v. State, 749 N.E.2d 528, 537 (Ind. 2001); White v. State, 687 N.E.2d 178, 179 (Ind. 1997); Moore v. State, 669 N.E.2d 733, 742 (Ind. 1996); Clausen v. State, 622 N.E.2d 925, 927 (Ind. 1993); Conner v. State, 580 N.E.2d 214, 219-20 (Ind. 1991). Furthermore, a claim of trial court error in admitting evidence may not be presented on appeal unless there is a timely trial objection "stating the specific ground of objection, if the specific ground was not apparent from the context." Ind. Evidence Rule 103(a)(1). *See also* Tapia v. State, 753 N.E.2d 581, 588 n.13 (Ind. 2001); Riley v. State, 427 N.E.2d 1074, 1076 (Ind. 1981). To preserve a claimed error in the admission of evidence, a party must make a contemporaneous objection "that is sufficiently specific to alert the trial judge fully of the legal issue." Moore, 669 N.E.2d at 742 (Ind. 1996). A mere general objection, or an objection on grounds other than those raised on appeal, is ineffective to preserve an issue for appellate review. *Id.*

As shown in our review of the defendant's objections, *supra*, his only trial objection that might arguably be related to his appellate claim of an Evid. R. 702 violation was the general trial objection that Dr. Namie "is not qualified to render an opinion." Tr. at 413. But this objection did not refer to Rule 702 nor provide any other specific ground for the objection. At no time dur-

7

ing his trial objections did the defendant claim that the subject matter of Dr. Namie's testimony lacked scientific reliability.[2] To the contrary, from its context, the trial court likely understood the defendant's "not qualified" objection to be claiming that Dr. Namie wasn't qualified due to his failure to personally interview the defendant and due to the witness's usual professional function as a consultant rather than a diagnostician. We find nothing in the trial court colloquy to have informed the trial judge of the claim that Dr. Namie's testimony was based upon unreliable scientific principles, that it violated Evidence Rule 702, or that it would not assist the jury to determine a fact in issue. The defendant may not present grounds on appeal that were not made at trial to support an objection. Moore, 669 N.E.2d at 742. This appellate claim is barred by procedural default.

The defendant separately argues that the trial court's limitation on Dr. Namie's testimony failed to cure the prejudice resulting from his referring to the defendant as a "workplace bully." The defendant urges that such a label is inherently prejudicial and impermissibly suggested to the jury that he acted with intent to bully. This appellate claim, however, is likewise procedurally barred because the grounds presented on appeal were not raised during trial.

### 4. Prior Bad Acts and Character Testimony

The defendant further seeks a new trial on grounds that he was unfairly prejudiced by hearsay evidence of his alleged prior bad acts and bad character. During the plaintiff's direct examination at trial, when asked whether he had heard about the defendant abusing other employees, the trial court, consistent with its pre-trial ruling and upon the request of defense counsel, informed the jury that the plaintiff's answers to this line of questions were not to be considered for the truth of the matter asserted but only considered to show the plaintiff's emotional state and why he reacted as he did on the occasion of the alleged assault. Later in the trial, at a bench conference just before the plaintiff called the defendant to testify, the trial court warned the plain-

---

[2] In arguments related to a defense motion in limine two weeks before trial began, the defense expressly raised Evidence Rule 702 and argued that Dr. Namie's expert testimony lacked sufficient reliability. Tr. at 55-57. But these objections were not expressly asserted at trial, nor did the context of defense counsel's trial objections refer back to or incorporate these prior arguments. Failure to timely present these grounds at trial forecloses their presentation on appeal. White, 687 N.E.2d at 179; Moore, 699 N.E.2d at 742; Clausen, 622 N.E.2d at 927; Conner, 580 N.E.2d at 219-20.

tiff's counsel that he would not be permitted to buttress his case by asking the defendant about these alleged incidents of the defendant's prior abuse of other employees. The judge also explained that the defendant should be permitted to deny the plaintiff's testimony regarding the defendant's prior abuse of other employees, but that if the surgeon presented testimony on this issue, the plaintiff would be permitted to call as witnesses the victims of the alleged prior abuse for purposes of impeaching the defendant's testimony. On appeal, the defendant contends that the trial court erred in making inconsistent rulings, in permitting evidence of his alleged prior bad acts in the absence of evidence that the plaintiff's fear at the time of the assault was based on his knowledge of these prior incidents, and in permitting evidence of prior bad acts as character evidence contrary to Ind. Evid. R. 404(b).

We find no inconsistency in the rulings. Further, at the point during the trial when the plaintiff first presented testimony about the alleged prior abuse of other employees by the defendant, Tr. at 464-470, the only objections asserted by the defense related to whether the plaintiff had heard about the incidents before the assault incident of November 2, 2001. Because there were no contemporaneous trial objections asserting improper prior bad acts or character evidence, consideration of these appellate claims is foreclosed.

### 5. Refusing Defendant's "Workplace Bullying" Instruction

The defendant surgeon's remaining appellate contention is that the trial court erred in refusing his tendered instruction on workplace bullying:

> "Workplace bullying" is not at issue in this matter, nor is there any basis in the law for a claim of "workplace bullying." In other words, you are not to determine whether or not the Defendant, Daniel Raess, was a "workplace bully." The issues are as I have instructed you: whether the Defendant assaulted the Plaintiff, Joseph Doescher on November 2, 2001, and whether that assault constituted intentional infliction of emotional distress.

Appellant's App'x at 501. The defendant argues that the jury should have been instructed that the phrase "workplace bully" was irrelevant to elements of the plaintiff's claims on trial and emphasizes his claim that there was no evidence that he intended to cause the plaintiff to have reasonable fear of imminent harm, which latter claim was rejected in Part 1, above. At the trial court's

9

instruction conference with counsel, the judge explained his refusal of the instruction as follows: "Well, you can argue that it [this case] isn't [about workplace bullying], and they're not going to get an instruction that says it is about workplace bullying, that's not in the elements of this anywhere…" Tr. at 1230.

To resolve an appellate claim of trial court error in refusing an instruction, we consider: (1) whether the tendered instruction is a correct statement of the law; (2) whether there is evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. Cavens v. Zaberdac, 849 N.E.2d 526, 533 (Ind. 2006); Miller Brewing Co. v. Best Beers of Bloomington, Inc., 608 N.E.2d 975, 979 (Ind. 1993). When evaluating these factors, we are mindful that instructing the jury generally lies within the sole discretion of the trial court and that reversal is appropriate only for abuse of discretion. Driver v. State, 760 N.E.2d 611, 612 (Ind. 2002).

At the point the jury was instructed, both the plaintiff's claims for assault and for intentional infliction of emotional distress were before the jury. The tendered instruction advanced two concepts: (a) that "workplace bullying" was not an issue in the case, and (b) that the jury need not determine whether the defendant was a "workplace bully" to decide the case. As to the first concept, we disagree. In determining whether the defendant assaulted the plaintiff or committed intentional infliction of emotional distress, the behavior of the defendant was very much an issue. The phrase "workplace bullying," like other general terms used to characterize a person's behavior, is an entirely appropriate consideration in determining the issues before the jury. As evidenced by the trial court's questions to counsel during pre-trial proceedings, workplace bullying could "be considered a form of intentional infliction of emotional distress." Tr. at 58; *see also id*. at 62. In seeking to tell the jury that "workplace bullying" was not an issue in the case, the tendered instruction was incorrect. Furthermore, in seeking to advise the jury that "workplace bullying" was not an element in the case, the tendered instruction was unnecessary. Other instructions adequately informed the jury of the elements of each of the plaintiff's causes of action. It was not necessary to emphasize to the jury that non-listed elements were not elements. We find that the trial court here did not abuse its discretion in refusing the tendered instruction.

## Conclusion

The trial court judgment entered on the jury verdict is affirmed.

Shepard, C.J., and Rucker, J., concur.  Sullivan, J., concurs in result with separate opinion. Boehm, J., dissents with separate opinion.

**Sullivan, Justice, concurring in result.**

I agree with Justice Boehm that defendant's pre-trial objections to the admissibility of Dr. Namie's testimony were adequately preserved for appeal. However, I concur in the Court's opinion because I believe that even if the Namie testimony was erroneously admitted, it was harmless error for purposes of this appeal.

As the Court's opinion recites, two claims were presented to the jury in this case: assault and intentional infliction of emotional distress. To prove the latter claim, plaintiff was required to prove that defendant (1) engaged in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress. Doe v. Methodist Hosp., 690 N.E.2d 681, 691 (Ind. 1997) (citing Restatement (Second) of Torts § 46 (1965) and other cases). Plaintiff offered Namie's testimony in an effort to establish these elements; the Namie testimony did not go to the elements of plaintiff's assault claim. But the jury acquitted defendant of intentional infliction of emotional distress. For this reason, even if the testimony was erroneously admitted, it was harmless error in respect of the judgment on the assault claim – the only claim being reviewed in this appeal.

**Boehm, Justice, dissenting.**

I respectfully dissent from the majority's conclusion that challenges to Dr. Namie's testimony were not preserved for appeal. I also conclude that his testimony was inadmissible and prejudicial.

I agree with the majority that a pretrial motion alone is insufficient to preserve for appellate review a claim of error in admitting evidence. Slip op. at 7 (citations omitted). I also agree that to preserve a claimed error at trial, a party must "make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue." Id. (citations and internal quotation omitted). I dissent because I believe Dr. Raess established that the trial court was alerted to the issue, and therefore the issue of admissibility of Dr. Namie's testimony was preserved for appeal.

Dr. Raess, the defendant, filed a pretrial motion to exclude Dr. Namie's testimony. In discovery, the plaintiff had described the subject of Dr. Namie's anticipated testimony as

> the phenomenon of psychological violence in the workplace, how certain organizational structures create a 'culture' wherein psychological violence can occur, and, based on data derived from thousands of case studies, the profile of those individuals prone to committing acts of psychological violence at work.

The defendant's motion contended that the complaint alleged no claim for "workplace bullying," and there is no such tort. Rather, the complaint alleged assault, intentional infliction of emotional distress, and tortious interference with a business relationship, all of which are recognized torts in Indiana law. The defendant argued that the "phenomenon of psychological violence in the workplace" is irrelevant to whether he committed any of these torts. The motion went on to point out that each of the various torts alleged in the complaint has a set of elements, none of which is "workplace bullying."

The motion also contended that the proposed testimony met none of the criteria for admissibility under Evidence Rule 702. Specifically, the motion explained how Dr. Namie's field of interest (1) "is not recognized in the Diagnostic and Statistical Manual of Mental Disorders . . . published by the American Psychiatric Association"; (2) "is not based on objective principles recognized by the scientific and/or mental health community"; and (3) "has never been subjected

to peer review." The defendant's motion also contended that Dr. Namie admitted that "there is no legal definition of workplace bullying" and "there are no objective criteria" to determine whether someone has been bullied. The defendant's motion also argued that Dr. Namie's conclusions were based solely on what the plaintiff had told him, and that Dr. Namie had "performed no testing." The conclusion of the motion was that Dr. Namie's testimony is irrelevant or prejudicial. This motion was denied without explanation.

Subsequent motions in limine added the contention that labeling the defendant as a bully necessarily accused him of habitual abuse and therefore amounted to evidence of prior bad acts prohibited by Evidence Rule 404(b). These motions were granted in part, permitting Dr. Namie to testify, but ruling that "plaintiff may testify about what he heard from others about Dr. Raess incident prior to 11-2-01 but will not be considered for truth of matter asserted but why plaintiff may of reacted as he did on 11-2-01." I take this as a ruling that the testimony was admissible as to the effect on the plaintiff, not the actions of the defendant.

At trial, the defendant objected to virtually every question posed to Dr. Namie after preliminary matters. When Dr. Namie first used the phrase "phenomenon of workplace bullying," the defendant interjected, "Your Honor," and the trial court responded, "All right. We're not going to talk about that. One more time and he'll be leaving, all right, that's stricken. You go over there and you instruct your witness as to my ruling." The defendant later objected to the "entire line of questioning" on workplace bullying. The trial court clearly understood the grounds for these objections and its previous rulings on admissibility. The transcript of the sidebar that ensued seems to me to demonstrate that the trial court understood Dr. Namie's testimony was to be in the nature of an explanation of the plaintiff's reaction to the incident. But Dr. Namie was clear that he was not a clinical diagnostician and did not offer any testimony as to the effect of a workplace incident on the plaintiff. Rather, he testified that the defendant, whom he had never met, was an "abuser."

At the conclusion of Dr. Namie's testimony, the trial court incorporated the defendant's pretrial motions regarding Dr. Namie's testimony "as arguments timely made." The defendant's objections and subsequent incorporation of pretrial motions were made at a time when the evidence was still open, providing the trial court the opportunity to reconsider its ruling in the con-

2

text of trial. Cf. Clausen v. State, 622 N.E.2d 925, 928 (Ind. 1993) ("By requiring that an objection be made during the trial at the time when the testimony is offered into evidence, the trial court is able to consider the evidence in the context in which it is being offered and is able to make a final determination on admissibility."). Had the trial court not made this ruling, the defense could have moved to strike Dr. Namie's testimony, citing the grounds in the motions. If this had been denied, the issue would have been preserved. In my view, the trial court's ruling was therefore sufficient to preserve the issue for appeal. In any event, the trial court's ruling in my view led the defendant to conclude that the issue was preserved, and that is enough for me.

I believe the defendant's objections were well grounded. Evidence Rule 702 permits expert opinion testimony as to "scientific, technical, or other specialized knowledge" to "assist the trier of fact to understand the evidence or to determine a fact in issue." Dr. Namie testified that in his opinion, the November 2, 2001 incident was "an episode of workplace bullying." He also testified that "based on what I heard and what I read that Dan Raess is a workplace abuser, a person who subjected Mr. Doescher to an abusive work environment." Nowhere, however, does Dr. Namie explain what a workplace bully is. Dr. Namie by his own testimony is not a clinical psychologist and is not qualified to testify as to how workplace bullying affected the plaintiff, and he did not testify on that subject. This is testimony characterizing an event, but offering no assistance to interpret or understand it. Without any context, the "workplace bullying" label is nothing more than highly prejudicial name-calling of no help to the jury.

The plaintiff argues that any error in admitting Dr. Namie's testimony is harmless in light of later testimony by Dr. David Hartman that was admitted without objection. Harmless error is error that does not affect the substantial rights of a party given the error's likely impact on the jury in light of other evidence presented at trial. Littler v. State, 871 N.E.2d 276, 278 (Ind. 2007) (quoting Witte v. Mundy, 820 N.E.2d 128, 135 (Ind. 2005)). Dr. Hartman, a clinical and forensic psychologist and neuropsychologist, testified that he examined the plaintiff and diagnosed him with depression, post-traumatic stress disorder, and paranoid thinking, which he explained were

> pretty typical for individuals who are bullied in the workplace, who are verbally assaulted in the workplace. . . . [I]t's a consistent issue between Mr. Doescher and other individuals out there and it's consistent with my own clinical experience of

3

people who are aggressive or abusive in the workplace and the effects on other people in the workplace.

Dr. Hartman's testimony was qualitatively different from Dr. Namie's. Dr. Hartman did not label the defendant a "workplace abuser" or the incident as "an episode of workplace bullying." Rather, Dr. Hartman's testimony offers a conclusion as to the plaintiff—that his mental state is typical of someone who has been "verbally assaulted" in the workplace. A "verbal assault" is not a legal assault, placing the victim in fear, stressful as it may be. Dr. Namie's labeling of the defendant amounted to purported expert testimony that the defendant had bullied the plaintiff. The erroneous admission of his testimony was therefore not harmless. I would remand for a new trial.