## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 23 2019, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Suber
Daniel G. Suber & Associates
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Philip F. Cuevas
Lauren M. Penn
Litchfield Cavo LLP
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

Karen Skaggs,

*Appellant/Cross-Appellee-Plaintiff,*

v.

Jennifer Yanta,

*Appellee/Cross-Appellant-Defendant*

April 23, 2019

Court of Appeals Case No.
18A-CT-2033

Appeal from the Porter Superior Court

The Honorable Roger V. Bradford, Judge

Trial Court Cause No.
64D01-1511-CT-10173

**Crone, Judge.**

## Case Summary

[1] Karen Skaggs filed a personal injury action against her landlord/roommate, Jennifer Yanta, for dog bites she suffered in an incident involving two of Yanta's dogs. The case proceeded to a jury trial. After Skaggs had presented her case-in-chief, the trial court granted Yanta's motion for judgment on the evidence. Skaggs now appeals, claiming that the trial court erred in entering judgment on the evidence. Yanta cross appeals, challenging the admissibility of Plaintiff's Exhibit 4, a notation sheet from the veterinarian's office concerning one of the dogs. We conclude that Yanta failed to preserve her challenge to the admissibility of Exhibit 4. Even so, we conclude that the trial court did not err in granting Yanta's motion for judgment on the evidence. Thus, we affirm the judgment on the evidence in favor of Yanta.

## Facts and Procedural History

[2] In 2013, Skaggs rented a basement room from Yanta, with whom she had been friends for over a decade. At the time, Yanta had three large-breed mastiff dogs. Not long after, Skaggs accompanied Yanta when Yanta purchased Philly, a female cane corso. The dogs roamed freely within Yanta's home and often spent time in the basement with Skaggs. Yanta was responsible for the feeding and care of her dogs, but Skaggs fed and cared for them when Yanta was not home. Skaggs frequently accompanied Yanta when she took the dogs for veterinary visits, and veterinarian Dr. Brooke McAfee recalled that Skaggs had sometimes brought them in for treatment by herself.

[3]     On August 16, 2015, Skaggs was home alone with the dogs. Philly and one of the mastiffs, Jersey, were playing together in the basement while Skaggs sat on the bed watching television. Jersey, apparently worn out from playing, went to lie down on the floor. Philly apparently wanted to continue playing, and Skaggs approached her, patted her, and said, "[H]ey Philly, that's enough, leave her alone." Tr. Vol. 2 at 176. Suddenly, the two dogs became entangled, and Skaggs suffered bites on both wrists, as well as on her left pinky finger. Jersey suffered several bite wounds that required emergency medical attention, and Philly sustained minor injuries that did not require medical attention.

[4]     Skaggs filed a personal injury action against Yanta, claiming that Yanta was aware of her dogs' allegedly dangerous propensities and failed to take steps to protect Skaggs. Yanta filed a motion for summary judgment. The trial court denied the motion, noting that Dr. McAfee had not yet been deposed. The parties agreed to bifurcate the proceedings into liability and damages phases.

[5]     Both parties filed several motions in limine. At a pretrial hearing on these motions, the trial court addressed Yanta's motion to exclude Plaintiff's Exhibit 4, a single-page McAfee Animal Hospital notation sheet titled "Veterinary Record." The sheet was dated June 6, 2014 and referenced the hospital's treatment of Jersey for a puncture wound near her right eye. Part of that entry reads, "dog fight Saturday." Plaintiff's Ex. 4. Yanta claimed that Exhibit 4 was inadmissible hearsay. She expressed reservations concerning the trustworthiness of the information included in it, claiming that, at best, it shows only that Jersey was the victim of dog bites, not that she was an aggressor.

Skaggs responded by arguing that the exhibit was admissible under the business record exception to the hearsay rule and that Yanta's reservations concerning the trustworthiness of the information therein could be addressed during cross-examination at trial. The trial court denied without comment Yanta's motion to exclude the exhibit.

[6] During the liability phase of the jury trial, Skaggs offered Exhibit 4 after laying a foundation through Dr. McAfee. Yanta said that she had no objection, and the trial court admitted the exhibit. At the close of Skaggs's case in chief, Yanta moved for judgment on the evidence. After oral argument outside the jury's presence, the trial court granted Yanta's motion and entered judgment in her favor. Skaggs now appeals. Additional facts will be provided as necessary.

## Discussion

## Section 1 – Yanta failed to preserve any error in the trial court's admission of Plaintiff's Exhibit 4.

[7] On cross appeal, Yanta challenges the trial court's admission of Plaintiff's Exhibit 4. During trial, Skaggs moved to admit Exhibit 4, and Yanta replied, "No objection, your Honor." *Id*. at 237. Yanta did not merely fail to object during trial, which would constitute waiver. *Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008). Rather, by specifically stating that she had no objection, she expressly agreed to the admission of Exhibit 4 and in so doing invited any error that may have occurred in its admission. *See Oldham v. State*, 779 N.E.2d 1162, 1172 (Ind. Ct. App. 2002) (where party expressly agrees to admission of

evidence during trial, any error in its admission is invited error, not subject to appellate review), *trans. denied* (2003). By inviting error concerning the admissibility of Exhibit 4, Yanta failed to preserve her evidentiary challenge for our review. To the extent that she relies on her motion in limine, we note that only trial objections, not motions in limine, are effective to preserve claims of error for appellate review. *Raess*, 883 N.E.2d at 796.

## Section 2 – The trial court did not err in granting Yanta's motion for judgment on the evidence.

[8] Having determined that Yanta failed to preserve any error in the trial court's admission of Exhibit 4 as a business record, we now address Skaggs's challenge to the trial court's grant of Yanta's motion for judgment on the evidence. A motion for judgment on the evidence challenges the legal sufficiency of the evidence. *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 106 (Ind. Ct. App. 2014), *trans. denied* (2015). When reviewing a trial court's ruling on a judgment on the evidence, we apply the same standard as the trial court. *Kimbrough v. Anderson*, 55 N.E.3d 325, 336 (Ind. Ct. App. 2016), *trans. denied*. "We may not substitute our judgment for that of the jury on questions of fact nor should a motion for judgment on the evidence be granted because the evidence preponderates in favor of the moving party." *Id*. Instead, we determine only whether any reasonable evidence exists to support the nonmovant's claim and, if so, whether the inference supporting the claim can be drawn without undue speculation. *Id*. In other words, "[t]he plaintiff's burden may not be carried with evidence based merely upon supposition or speculation." *Laycock v. Sliwkowski*, 12 N.E.3d 986,

992 (Ind. Ct. App. 2014), *trans. denied* (2015). The motion should be granted only where there is no substantial evidence to support an essential issue in the case. *Solnosky v. Goodwell*, 892 N.E.2d 174, 181 (Ind. Ct. App. 2008). "If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper." *Id.*

[9] Here, Skaggs seeks redress for personal injuries she suffered when bitten by Yanta's dog(s). Under Indiana common law,

> all dogs, regardless of breed or size, are presumed to be harmless domestic animals. This presumption is overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. A dangerous propensity is a tendency of the animal to do any act that might endanger the safety of persons or property in a given situation.

*Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind. 2003) (citations omitted). Owners of domestic animals may be held liable for harm caused by their pet "only if the owner knows or has reason to know that the animal has dangerous propensities." *Id.* at 1259. "[A] jury may not infer that an owner knew or should have known of a dog's dangerous or vicious propensities from the fact of a first time, unprovoked biting." *Id.* at 1260. Nevertheless, "a jury may infer that the owner knew or should have known of the dog's dangerous or vicious propensities only where the evidence that the particular breed to which the owner's dog belongs is known to exhibit such tendencies." *Id.*

[10] Here, Skaggs does not assert that either Philly or Jersey belongs to a breed known to show vicious tendencies. In fact, she raises no argument at all with respect to Philly. Rather, she asserts that Yanta had reason to know that Jersey had dangerous propensities due to the entry on the June 6, 2014 veterinary notation sheet indicating, "dog fight Saturday." Plaintiff's Ex. 4. Dr. McAfee treated her that day and had no recollection or record of Jersey's having been in a dog fight. She explained that generally the notation sheets are filled out by veterinary technicians who sometimes record their own inferences based on a particular pet's condition and/or the owner's explanation of the circumstances surrounding the pet's need for treatment. She emphasized that in her treatment of Jersey over the years, she found her to be well trained and well behaved. She also explained that dogs living in multi-dog homes often receive bites resulting in puncture wounds when they are not fighting but are merely playing together. Defendant's Ex. C at 64-65. She estimated that she sees puncture wounds in dogs almost every other day.

[11] Moreover, the record shows that Skaggs was immensely familiar with Yanta's dogs. By the time she was bitten in 2015, she had lived in Yanta's home with Jersey for two years. Yet, neither she nor Yanta could recall any dog fight that precipitated the June 2014 vet visit. In her own account of the 2015 incident, Skaggs said that Jersey had ceased playing/scuffling with Philly and had gone to lie down. It was Philly that was anxious to resume play, and it was Skaggs's action of approaching Philly that precipitated Jersey's resumption of play and ultimate entanglement with Philly and Skaggs. When asked at trial whether she

remembered which dog bit her, Skaggs responded, "I have no idea, it was chaos. I don't know, probably both of them." Tr. Vol. 2 at 183. This testimony amounts to speculation as to whether Jersey bit Skaggs at all. In fact, there was no probative evidence that Jersey had ever been vicious, as the veterinary record showed only that Jersey suffered injuries that she might have received from what an unidentified technician presumed to have been a dog fight. In other words, in her case-in-chief, Skaggs's evidence showed only that Jersey was a victim of puncture wounds in June 2014. There is no evidence that Jersey was ever an aggressor, either with another dog or with a human.

[12] In sum, the record simply does not support an inference that Jersey had shown any vicious propensities about which Yanta should have been aware. Instead, Skaggs's argument concerning Jersey's history requires undue speculation. As Skaggs has failed to overcome the presumption that Yanta's dogs were harmless domestic pets, we affirm the grant of judgment on the evidence in favor of Yanta.

[13] Affirmed.

Bradford, J., and Tavitas, J., concur.